**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas G. Lee,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Albertson's LLC,<br><br>　　　　　Defendant. | No. CV-19-04493-PHX-DWL<br><br>**ORDER** |

Pending before the Court is a motion for summary judgment by Defendant Albertson's LLC ("Albertson's"). (Doc. 21.) For the following reasons, the Court will require the parties to file supplemental briefing.

**BACKGROUND**

I. <u>Arizona's Laws Governing The Use Of Medical Marijuana In The Workplace</u>

In November 2010, Arizona voters enacted the Arizona Medical Marijuana Act ("AMMA") by ballot initiative. Under the AMMA, "a "qualifying patient" may obtain a registry card from the Arizona Department of Health Services to buy and use medical marijuana. A.R.S. § 36-2804.02. The AMMA also includes an anti-discrimination provision that now provides, in pertinent part, as follows:

> Unless a failure to do so would cause an employer to lose a monetary or licensing related benefit under federal law or regulations, an employer may not discriminate against a person in hiring, termination or imposing any term or condition of employment or otherwise penalize a person based upon either . . . [t]he person's status as a cardholder [or] [a] registered qualifying patient's positive drug test for marijuana components or metabolites, unless the patient

used, possessed or was impaired by marijuana on the premises of the place of employment or during the hours of employment.

*Id.* § 36-2813(B).

In April 2011, the Arizona Legislature enacted the Drug Testing of Employees Act ("DTEA"). Among other things, the DTEA provides that "[n]o cause of action is or may be established for any person against an employer who has established a policy and initiated a testing program in accordance with this article for . . . [a]ctions to exclude an employee from performing a safety-sensitive position,[1] including reassigning the employee to another position or placing an employee on paid or unpaid leave, based on the employer's good faith belief that the employee is engaged in the current use of any drug, whether legal, prescribed by a physician or otherwise, if the drug could cause an impairment or otherwise decrease or lessen the employee's job performance or ability to perform the employee's job duties." A.R.S. § 23-493.06(A)(7).

II. The Accident, Positive Drug Test, And Termination

Since 2012, Plaintiff Thomas Lee has held a medical marijuana card issued by the Arizona Department of Health Services. (Doc. 21-2 at 9.) In late April 2018, Lee was assigned to work as a forklift driver at an Albertson's grocery distribution warehouse in Tolleson, Arizona. (*Id.* at 23-24.) For most of his 22-year career, Lee had worked as a forklift driver at a different warehouse owned by Albertson's. (*Id.* at 8.)[2] Lee received a brief orientation and abbreviated training upon his transfer to the Tolleson warehouse. (*Id.* at 11.) At the time of the transfer, Lee had not driven a forklift in over a year. (*Id.*)

On May 1, 2018, Lee was using a forklift to place a pallet of product[3] onto a rack. (*Id.*) When he pulled the forks out and brought them down, he heard a crash and saw that

---

[1] A different provision of the DTEA defines "safety-sensitive position" as "any job designated by an employer as a safety-sensitive position or any job that includes tasks or duties that the employer in good faith believes could affect the safety or health of the employee performing the task or others, including . . . [o]perating a motor vehicle, other vehicle, equipment, machinery or power tools." A.R.S. § 23-493(9).

[2] The other warehouse was previously owned and operated by Safeway, which Albertson's acquired in 2015. (Doc. 21 at 3 n.2.)

[3] According to the complaint, ramen noodles. (Doc. 1-3 at 6 ¶ 15.)

- 2 -

1  two pallets had flipped. (*Id*. at 65.) Lee reported the accident to his supervisor, who
2  accompanied Lee to the scene. (*Id*. at 11.) Lee repeatedly asked his supervisor why the
3  racks were not "bolted down" as they were in the Tempe warehouse. (*Id*.) Lee's supervisor
4  opined in a subsequent report that the accident could have been avoided with a "better level
5  of experience." (*Id*. at 12.)

6        Company policy required Lee to take a drug test following the accident. (*Id*. at 11.)
7  Lee informed his supervisor that he had a medical marijuana card and a prescription for
8  hydrocodone. (*Id*.) Lee had not previously disclosed to Albertson's that he used either
9  substance. (*Id*.) Lee's urine tested positive for tetrahydrocannabinol ("THC"), an active
10 ingredient in marijuana. (*Id*. at 12.) His breath test was negative. (*Id*. at 42.) Lee's
11 supervisor suspended him after receiving the positive urine test. (*Id*.)

12       On May 2, 2018, Lee was discharged. The stated reason for the termination was
13 that Lee "violated the drug and alcohol policy." (*Id*. at 12.)

14 III.    Arbitration—Initial Stages

15       On May 8, 2018, Lee's union filed a grievance on his behalf, arguing that his
16 termination violated the AMMA because (1) he was not impaired at the time of the accident
17 and (2) Albertson's had improperly, and in bad faith, classified all of its positions as safety-
18 sensitive under the DTEA. (*Id*. at 14-15.) In accordance with the labor agreement between
19 Lee's union and Albertson's, the grievance was submitted to arbitration. (*Id*. at 4-5.)

20       On December 13, 2018, Lee and Albertson's participated in the arbitration hearing.
21 (*Id*. at 22-89 [hearing transcript].)

22 IV.    Initiation Of This Action

23       On May 1, 2019—while the arbitration was still pending—Lee filed a complaint in
24 Maricopa County Superior Court. (Doc. 1-3 at 5.) The gravamen of Lee's complaint is
25 that Albertson's violated the AMMA by terminating him. (*Id*.) However, Lee's theory of
26 liability is somewhat different from the theory of liability he advanced during the
27 arbitration. Specifically, although Lee repeats his claim that he wasn't impaired at the time
28 of the accident (*id.* at 7 ¶ 22), he now argues that Albertson's reliance on the DTEA's

"safety-sensitive position" exception is misplaced because that provision is "unconstitutional as a violation of the Arizona Constitution as amended by the Voter Protection Act (Proposition 105)" (*id.* at 8 ¶¶ 36, 43).

V. The Arbitrator's Decision

On May 29, 2019, the arbitrator denied Lee's grievance. (*Id.* at 7-19 [arbitrator's decision].) The arbitrator found that Albertson's had "established a 'good faith belief' that [Lee] was impaired during the accident. Therefore, . . . [Lee] violated [Albertson's] drug and alcohol policy by his conduct." (*Id.* at 18.)

VI. Subsequent Developments In This Action

On June 18, 2019, Albertson's removed this action to federal court. (Doc. 1.)

On June 24, 2019, Albertson's filed an answer to Lee's complaint. (Doc. 7.)

On October 11, 2019, the Court certified to the Attorney General for the State of Arizona that a constitutional challenge to a state statute had been presented in this case. (Doc. 18.) The certification order provided that "[a]t issue is whether A.R.S. §§ 23-493.06(A)(7) & (B) and/or 23-493(9) unconstitutionally amend or implicitly repeal A.R.S. § 36-2813(B) and 36-2814(A)(3) in violation of the Voter Protection Act, Ariz. Const. art. IV, Pt. 1 § 1." (*Id*. at 1.) The certification order also provided that if the Attorney General wished to intervene, he had to so by November 8, 2019. (*Id*. at 2.) The Attorney General did not intervene.

On November 18, 2019, the Court issued an order, following a review of the parties' joint report on settlement efforts, concerning Lee's contemplation of a motion to certify a question of law to the Arizona Supreme Court concerning the constitutionality of the DTEA's "safety-sensitive position" exception. (Doc. 20.) The Court noted that it was "tentatively disinclined" to certify that question because Albertson's had "identified several reasons why it may prevail in this lawsuit without the need to reach the constitutionality of the . . . exception," including that Lee was "actually impaired at the time of the accident and that res judicata principles bar this lawsuit," and resolving the lawsuit on either of those grounds would render a certification request "unnecessary and

advisory." (*Id*. at 2.) The Court invited further briefing from Lee on this point (*id.*), which Lee declined to provide.

On January 31, 2020, Albertsons's filed a motion for summary judgment. (Doc. 21.)

On March 16, 2020, Lee filed a response. (Doc. 24.)

On March 31, 2020, Albertson's filed a reply. (Doc. 25.)

## DISCUSSION

The parties' summary judgment briefing asks the Court to resolve an unsettled question of state law—whether the Arizona Legislature's 2011 attempt (via the enactment of the DTEA) to create a "safety-sensitive position" exception to the AMMA, under which an employer may categorically prohibit medical marijuana cardholders from holding certain positions, is invalid as a matter of state law. Although it may ultimately prove necessary to resolve this question, the Court will order the parties to file supplemental briefing concerning two other issues whose resolution may obviate the need to reach it. *See generally United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

First, as noted, Lee challenged his termination by filing a grievance against Albertson's. That grievance was resolved via an arbitration proceeding in which Albertson's prevailed. In its answer, Albertson's raises the affirmative defense that Lee's "claims are barred by the doctrine of *res judicata*. For example, [Lee's] claim for wrongful termination was the subject of a binding arbitration award in favor of Defendant." (Doc. 7 at 8 ¶ H.) Additionally, Albertson's motion for summary judgment includes the observation that "Plaintiff has already presented this case in a binding arbitration . . . . Plaintiff has not challenged the Arbitrator's Award and there [are] no lawful grounds for doing so." (Doc. 21 at 2.) However, Albertson's summary judgment motion presents no additional law or argument pertaining to which claims or issues in the present suit might be barred by res judicata. Given this backdrop, it is unclear whether Albertson's is actually

seeking summary judgment based on the res judicata effect of the arbitration.

Second, and in a related vein, the arbitrator ruled in Albertson's favor because he determined, as a factual matter, that Albertson's had "established a 'good faith belief' that [Lee] was impaired during the accident." (Doc. 21-2 at 17-18.) In support of this determination, the Arbitrator emphasized that Lee admitted using marijuana "as a regular and daily part of his routine" (*id.* at 9) and noted that "[i]mpairment by ingesting marijuana is a clinical reality." (*Id.*) In its reply, Albertson's argues that its good-faith belief that Lee was impaired at the time of the accident shows that its decision to terminate Lee was permissible under the AMMA (and, thus, provides a basis for granting summary judgment in its favor without resolving the validity of the DTEA's "safety-sensitive position" exception). (Doc. 25 at 2.)[4] However, Albertson's did not squarely raise this argument in its motion—although the motion includes the observation that "the AMMA's antidiscrimination provision does not protect cardholders who 'are impaired by' marijuana on the employer's premises or during working hours" (Doc. 21 at 11), the motion does not appear to specifically seek summary judgment on this basis.

It would be unfair to Lee to consider granting summary judgment on either of these grounds given Albertson's failure to specifically and distinctly raise them in its motion. *Cf. Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1055 (9th Cir. 2005) ("Our research failed to find a single case in which this court has upheld a dismissal for claim or issue preclusion where the parties were not given any opportunity to be heard on the issue."). Indeed, Lee construed Albertson's motion as "conced[ing] that it is relying on the DTEA's conflicting 'safety sensitive' provisions to justify its termination of Mr. Lee" (Doc. 24 at 4) and thus did not address the potential res judicata effect of the arbitration, or the issue of Albertson's alleged good-faith belief of impairment, in his response.

---

[4] Specifically, Albertson's argues: "Plaintiff's sole argument in his Response contends that the legislature-passed DTEA's 'safety-sensitive' position protection unconstitutionally amended the voter-approved AMMA. . . . [This] ignores a major conclusion of the Arbitrator in his Opinion and Award sustaining Plaintiff's discharge as proper: Albertsons established that it acted upon a 'good faith belief' that Plaintiff was impaired at work and during the accident that precipitated his termination. Plaintiff removed himself from the anti-discrimination protections of the AMMA by working while impaired." (Doc. 25 at 2, citation omitted.)

- 6 -

Accordingly, the Court will exercise its discretion under Rules 56(e) and 56(f) to order the parties to file supplemental briefing on those two issues. To the extent Albertson's is not seeking summary judgment on these grounds, it may simply verify this in its supplemental brief. Alternatively, if Albertson's is seeking summary judgment on one or both of these grounds, it must explain the legal basis for its position and cite the portions of the record that support its position.

Accordingly, **IT IS ORDERED** that Albertson's must file a supplemental brief, not to exceed 10 pages, by **July 21, 2020**, that addresses the issues addressed above. Lee must file a response, not to exceed 10 pages, by **August 4, 2020**. Albertson's may file a reply, not to exceed 5 pages, by **August 11, 2020**.

Dated this 7th day of July, 2020.

_____
Dominic W. Lanza
United States District Judge